**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| MITCHELL LEE SMITH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:20-CV-671-JEM |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Mitchell Lee Smith

on August 11, 2020, and Plaintiff's Brief [DE 25], filed May 31, 2021. Plaintiff requests that the

decision of the Administrative Law Judge be reversed and remanded for further proceedings. On

June 29, 2021, the Commissioner filed a response, and Plaintiff filed his reply on August 12, 2021.

For the foregoing reasons, the Court remands the Commissioner's decision.

**I.      Background**

On March 6, 2017, Plaintiff filed an application for benefits alleging that he became

disabled on September 1, 2013. Plaintiff's application was denied initially and upon consideration.

On May 2, 2019, Administrative Law Judge ("ALJ") Charles J. Thorbjornsen held a hearing at

which Plaintiff, along with an attorney and a vocational expert ("VE"), testified. On June 12, 2019,

the ALJ issued a decision finding that Plaintiff was not disabled. Thereafter, Plaintiff amended his

disability onset date to March 6, 2017.

The ALJ made the following findings under the required five-step analysis:

1.      The claimant has not engaged in substantial gainful activity since March 6,
        2017, the application date.

2.      The claimant has the following severe impairments: alcohol use disorder, in recent remission, with seizures, anxiety, and depression; cervical and lumbar degenerative disc disease; shoulder degenerative joint disease; and congenital pes cavus of the bilateral feet.

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.      The claimant has the residual functional capacity to lift and/or carry and push and/or pull no more than twenty (20) pounds occasionally and up to ten (10) pounds frequently; sitting, standing, and walking are each limited to six (6) hours of an eight hour work day; he can never reach overhead bilaterally; he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps or stairs; and he can frequently balance, stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights or around moving mechanical parts. He is able to perform simple, routine tasks, to interact with coworkers and the general public occasional brief and superficial contact defined as no lower than an eight in terms of the fifth digit[1] of the Dictionary of Occupational Titles (D.O.T.)  code.

5.      The claimant has no past relevant work.

6.      The claimant was a younger individual age 18-49 on the application date.

7.      The claimant has at least a high school education and is able to communicate in English.

8.      Transferability of job skills is not an issue because the claimant has no past relevant work.

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.     The claimant has not been under a disability, as defined in the Social Security Act, from March 6, 2017, through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final

---

[1] The ALJ offered this explanation of this limitation in a footnote: "POMS DI 25001.001 explains that worker function codes (middle three digits of a D.O.T. code) consist of data function (fourth digit), people function (fifth digit), and things function (sixth digit) of occupations defined in the D.O.T. The "8" for people function (fifth digit) deals with taking instruction—helping."

decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 11]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.   Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*,

3

381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.   Analysis

Plaintiff argues that the ALJ erred in relying on stale opinions of the non-treating state agency medical professionals and not giving deference to claimant's treating medical professionals. Plaintiff further argues that the ALJ failed to consider state agency medical professional opinions placing greater restrictions on claimant's mental capacity than the restrictions adopted by the ALJ. The Commissioner argues that there is substantial evidence in the record to support the ALJ's light duty conclusions, and the ALJ properly evaluated the state agency's medical and psychological medical professionals' opinions.

4

Plaintiff argues that the non-examining state agency medical professionals' opinions were stale because they had not considered a spinal MRI taken prior to their opinions showing conditions that could have caused the pain and limitations Plaintiff testified about. Plaintiff argues that the ALJ was impermissibly playing doctor by interpreting the imaging tests not relied on by the state-agency medical professions, and that the conclusions about Plaintiff's movement restrictions and impairments were unsupported.

The ALJ gave "great weight" to the opinions of the state agency medical professionals who reviewed the medical records but did not examine Plaintiff. He explained that he gave great weight because "state agency consultants are highly qualified doctors who are skilled in the evaluation of medical issues in disability claims under the Act." However, as Plaintiff points out, they did not review a spinal MRI which had not been submitted prior to their review. The Plaintiff's medical provider who interpreted the spinal MRI noted progression of degenerative changes and other significant findings. AR. 1420. The ALJ apparently concluded that the MRI and interpretation was not new and material evidence because he did not address the fact that the agency consultants had not reviewed it, despite it showing further deterioration in Plaintiff's condition. Instead of submitting the MRI to trained professionals, the ALJ interpreted it himself. The ALJ concluded the MRI showed "mild progression of degenerative changes" at L4-5, "unchanged posterior disc osteophyte complex" at L5-S1, and similar unchanged findings from prior imaging. As Plaintiff argues, an ALJ is required to rely on expert opinions and should not determine the significance of medical tests himself. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *see also Israel v. Colvin*, 840 F.3d 432 (7th Cir. 2016) ("there is always a danger when lawyers and judges attempt to interpret medical reports and that peril is laid bare here"); *Browning v. Colvin*,

5

766 F.3d 702, 705 (7th Cir. 2014) (noting that administrative law judges are not permitted to "play doctor"); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) ("Moreover, the ALJ seems to have succumbed to the temptation to play doctor when she concluded that a good prognosis for speech and language difficulties was inconsistent with a diagnosis of mental retardation because no expert offered evidence to that effect here"). An ALJ may not give "uncritical acceptance" of state-agency medical professionals when the ALJ "failed to submit [the imaging] to medical scrutiny, as he should have done since it was new and potentially decisive medical evidence. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000). Specifically, the "ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments." *Id*., *citing Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018).

It also appears that the ALJ was playing doctor when he addressed certain of Plaintiff's x-rays. Plaintiff argues that the ALJ was not qualified to conclude whether Plaintiff's shoulder etiology placed restrictions on reach overhead, forward, or laterally, or some combination of the three. The ALJ relied on his own interpretation of Plaintiff's right shoulder x-rays and the right shoulder MRI to identify a limitation of "no overhead reaching," rather than any other limitation, including even "occasional" reaching in all directions.

Plaintiff also argues that the ALJ was not qualified to conclude whether Plaintiff's meniscal tear and arthritic cysts in his knee would not limit his ability to perform basic work activities. The ALJ concluded that Plaintiff's knee condition had not existed continuously for a period in excess of twelve months since the knee MRI was from January 2019. To reach this conclusion, the ALJ had to conclude that Plaintiff's knee complaints from earlier were not caused by the same condition. The ALJ is required to rely on expert opinions and should not determine the significance, or

meaning, of medical testing himself. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Plaintiff also argues that the RFC did not take into account Plaintiff's social and concentration limitations. The agency reviewers concluded that Plaintiff had limitations on his ability to "maintain attention and concentration for extended periods" and should be restricted to working in situations in which he would have to only "respond appropriately to brief supervision and interactions with coworkers." AR 130-131. The ALJ concluded that Plaintiff was moderately limited in mental functions and included social limitations in the RFC to performing simple routine tasks, interacting with coworkers and the general public occasionally and briefly and superficial contact of "taking instruction--helping". The record does not explain how the ALJ came to his conclusion. "A list of evidence punctuated with a conclusion does not discharge an ALJ's duty to form a logical bridge between the evidence and [her] conclusion that [Plaintiff] has no marked limitations." *Pimentel v. Astrue*, No. 11 CV 8240, 2013 U.S. Dist. LEXIS 2548, at *25 (N.D. Ill. Jan. 8, 2013); *see also Smith v. Astrue*, No. 02 CV 6210, 2011 U.S. Dist. LEXIS 17691, at *31 (N.D. Ill. Feb. 22, 2011) ("cataloguing [the evidence] is no substitute for analysis or explanation.").

This case is being remanded for a new determination of the effects of Plaintiff's spinal, shoulder, and knee conditions, and the new RFC should incorporate all limitations, including those associated with his mental functioning. The ALJ is reminded that "[w]hen an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

On remand, the ALJ is directed to consider all the medical evidence and opinions in the record. The ALJ should fully consider each of Plaintiff's alleged impairments, alone and in combination, and provide a logical bridge from the evidence to his conclusion.

**VI.      Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 25] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 23rd day of February, 2022.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:  All counsel of record